UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA } | |
| } | |
| v.                        } | CASE NO. 15-CR-10338-FDS |
| } | |
| OSCAR NOE RECINES-GARCIA  } | |
|     Defendant.     } | |

**DEFENDANT'S MOTION TO SUPPRESS
CELL PHONE SEARCH WARRANT AND INCORPORATED
MEMORANDUM OF LAW (LEAVE TO FILE GRANTED 2/26/18)**

The Defendant moves to suppress the results of a cell phone search warrant. Suppression is appropriate because the affidavit in support of the warrant failed to establish that evidence of a crime would be found on the phones. In addition, the four-month delay between seizure of the phones and the application for the search warrant was unreasonable.

**Statement of Facts**

On July 8, 2015, Somerville Police and Homeland Security officers entered an apartment at 142 Broadway in Somerville. After arresting the occupants for "immigration charges," officers searched the residence without a warrant.[1] During the search, they discovered a gun, drugs, various cell phones, as well as other items. See Wood Aff., Pg. 3.

In his affidavit in support of the search of the phones, Wood details the FBI's investigation into MS-13 with a long discussion about the exploits of "CW-1," who recorded calls, conversations and meetings with various alleged MS-13 members.

---

[1] This search is also the subject of a motion to suppress.

1

None of these recordings involve or implicate the occupants of 142 Broadway. Id., Pgs. 3-7.

After discussing the July 8 arrests and search, Wood next details information received from a "CW-4." This person, according to the affidavit, says that the men arrested at 142 Broadway were all MS-13 members, that the gun was a "clique" or shared gun, and that some of the men had been involved in a murder in Lawrence days earlier. Id., Pgs. 7-12. Based on this information, the cell phone warrant was requested, and authorized, on November 13, 2015. Id., Pg. 19.

## Argument

### I. The search warrant affidavit failed to establish the required nexus between the crime being investigated and the place to be searched

The affiant failed to demonstrate a "nexus" between illegal activity and the cell phones. *United States v. Zayas-Diaz*, 95 F.3d 105, 110-11 (1st Cir. 1996) (quoting *United States v. Fuccillo*, 808 F.2d 173, 175 (1st Cir. 1987). To meet this burden, the affiant must prove, through particularized facts, that there was "a *fair probability* that contraband or evidence of a crime will be found" on the devices. *Zayas-Diaz*, 95 F.3d at 111 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis in original). In this case, the nexus requirement was not satisfied.

#### A. The warrant failed to set forth any facts connecting the phones to the crimes being investigated

The affidavit fails to set forth any evidence connecting the phones to criminal activity. It first alleges that the Defendant was a member of MS-13. It further alleges, without specificity, that some of the residents of the apartment were

2

involved in a murder. Yet there is no evidence that the Defendant was involved in the murder and no evidence that a phone was used to facilitate the murder.

Wood does assert that "based on the investigation to date," the FBI has determined that some MS-13 members use cell phones to communicate about the gang's activities. Yet he offers no details about this particular "clique" and their phone use. Nor does he provide evidence that the search of <u>these</u> phones would reveal proof of the Defendant's membership in the gang (or anyone else's). In fact, there is no proof that the seized phones even belonged to the occupants of the apartment. As such, the warrant failed to establish the required factual nexus.[2]

### B. A law enforcement officer's opinion, based on his training and experience, cannot furnish the required nexus

Because he lacked specific facts connecting the seized phones to criminal activity, Wood relied primarily on his "training and experience." *See e.g.* Wood Aff., Pgs. 2, 12, 13, 16. Yet an affiant's opinion, based on his training and experience, cannot make up for the lack of a factual nexus; specific, particularized evidence is required. *See e.g. United States v. Rosario*, 918 F.Supp. 524, 531 (D.R.I. 1996) ("To permit a search warrant based solely upon the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect."); *United States v. Gianelli*, 585 F.Supp.2d

---

[2] Since the warrant failed to set forth any facts connecting the phones to the crimes at issue, the good faith exception should not apply. *United States v. Leon*, 468 U.S. 897, 899 (1984) (no good faith defense where officers are "relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.").

150, 167 (D.Mass. 2008) (Gorton, J.), *aff'd sub nom United States v. Albertelli*, 687 F.3d 439 (1st Cir. 2012) ("probable cause cannot rest entirely on a law officer's experience and training," though such opinion may be considered as part of the calculus); *United States v. Kosta*, No. Crim. 12-10226-DJC, 2013 WL 5934030, at *5 n.5 (D. Mass. Oct. 31, 2013) ("Although training and experience can illuminate the meaning of certain facts, it cannot be the substitute for a lack of probable cause"); *United States v. Schultz,* 14 F.3d 1093, 1097 (6th Cir.1994) (an officer's training and experience "cannot substitute for the lack of evidentiary nexus"); *United States v. Rios,* 881 F.Supp. 772, 775 (D.Conn. 1995) (an agent's expert opinion does not, by itself, establish the necessary nexus for a search warrant); *United States v. Gomez*, 652 F.Supp. 461, 463 (E.D.N.Y. 1987) (affiant's "expert opinion that narcotics traffickers often keep records in their residences ... does not alone provide probable cause to search."); *United States v. Guay*, 2001 WL 1571460, at * 10 (D. Me. Dec. 11, 2001) ("An officer's opinion based upon his knowledge of the behavior and practices of child molesters, by itself, does not furnish the requisite nexus between the criminal activity and the place to be searched."); *Commonwealth v. Broom*, 474 Mass. 486, 496-97 (2016) (police officer's statement about what his "training and experience" teaches him is nothing but a "general, conclusory statement [which] adds nothing to the probable cause calculus" in the absence of "particularized evidence.").

The proper purpose for which a judge may consider a law enforcement officer's training and experience is to "illuminate the meaning of certain facts."

4

*Kosta*, 2013 WL 5934030, at *5 n. 5. "However, this assertion presupposes the inclusion of facts in the affidavit for the law enforcement officer to interpret." *United States v. Feliz*, 20 F.Supp.2d 97, 103 n. 7 (D. Me. 1998), *rev'd on other grounds*. Where no such facts are contained in the affidavit, the officer's training and experience "cannot be the substitute for a lack of probable cause." *Kosta*, 2013 WL 5934030, at *5 n. 5. If the rule were any different, law enforcement agents, "[b]y way of expert opinion ... could effectively eviscerate the rule that '[p]robable cause to arrest an individual does not, in and of itself, provide probable cause to search that person's [property]." *United States v. Guzman*, No. S5 97 CR 786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb 13, 1998) (citing *United States v. Santarsiero*, 566 F.Supp. 536, 538 (S.D.N.Y. 1983)); s*ee also Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property…").

In a similar case, *Rosario*, the court addressed the question of "whether the opinion of a government agent based upon her knowledge of the behavior and practices of narcotics dealers can, *by itself,* furnish the requisite nexus between the criminal activity and the place to be searched." 918 F. Supp. at 530. There, the affiant established that "Rosario participated in illegal activity," by noting, among other things, that an informant purchased cocaine from Rosario during a controlled buy. *Id*. at 529. In attempting to get a search warrant for Rosario's house, the affiant noted that "Rosario was observed at the Bourne Avenue address" on one

occasion, and that the electricity for the home in question was in Rosario's name. *Id*. The Court held that this created a "reasonable inference that Rosario lived at 140 Bourne Avenue." *Id*.

Yet "the only allegations to support the inference that evidence of Rosario's alleged criminal activity would be found at the Bourne address are the conclusory declarations made by [the affiant] based upon her training and experience" of "how most drug dealers operate." *Id*. at 529-531. After acknowledging that the affiant had "extensive training and expertise," the court held that such training and experience cannot establish probable cause without particularized supporting facts. *Id*. at 531. In so holding, the court noted that "[t]o permit a search warrant based solely upon the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *Id*., (citing *Schultz*, F.3d at 1098; *Gomez*, 652 F.Supp. at 463).

Likewise, in *Gianelli*, 585 F.Supp.2d at 166-167, the defendant argued that the nexus requirement was not satisfied since "the only evidence connecting Puopolo's residence to alleged contraband are the 'general opinions' of [the affiant]." The court agreed that "probable cause cannot rest entirely on a law officer's opinions based on his experience and training," but disagreed with the defendant's analysis of what was contained in the affidavit. *Id*. The court noted that there were additional, particularized facts which supported the finding of probable cause. Specifically, the defendant was intercepted *on his home phone*, discussing "money

6

won, lost, due, and owed to him as well as the results in sporting events that would be beneficial for him and his gaming organization." *Gianelli*, 585 F.Supp.2d at 166-167. Since he would have needed the records in front of him to discuss them over his home phone, it followed that there was probable cause to believe that he was keeping the evidence at his home. *Id*. at 167. The affiant's opinion "that bookmakers generally keep records in their home further supports a finding of probable cause." *Id*. Yet the Court acknowledged, as here, that the affiant's opinion alone could not have established the required connection. *Id*. Without this factual nexus, the warrant is invalid.

## II. The Government unreasonably delayed more than four months to seek a search warrant; good faith does not apply

The Government waited more than four months from the warrantless seizure before it sought a search warrant for the phones. This delay was constitutionally unreasonable.

A seizure of a person's property pending a warrant is constitutional only "if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701 (1983). Moreover, an initial seizure, even if lawful, can become "unreasonable because its length unduly intruded upon constitutionally protected interests," *United States v. Jacobsen*, 466 U.S. 109, 124 n.25 (1984), or "if police act with unreasonable delay in securing a warrant." *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998).

Courts demand expediency in obtaining a search warrant for seized evidence to avoid interfering with a continuing possessory interest for longer than reasonably necessary. *United States v. Sparks*, 806 F.3d 1323, 1340 (11th Cir. 2015). The reasonableness of the delay depends on the facts and circumstances of the case; there is no "bright line past which delay becomes unreasonable." *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012). However, "[w]hen police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *Id.* at 1033-34.

To determine whether a delay is unreasonable, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Illinois v. McArthur*, 531 U.S. 326, 331 (2001). In addition to the reason for the delay[3], several other factors are relevant to this inquiry: first, the significance of the interference with the person's possessory interest, *see United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009); second, the duration of the delay, *see Place*, 462 U.S. at 709 (characterizing the "brevity" of the seizure as "an important factor"); third, whether or not the person consented to the seizure, *see United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011); and fourth, the

---

[3] The reason for the delay is not clear from the warrant. The affidavit in support of the warrant, however, is only nineteen pages long, including several pages of boilerplate and several that were cut and paste from the police reports.

government's legitimate interest in holding the property as evidence. *See Burgard*, 675 F.3d at 1033. In this case, the factors all weigh in favor of suppression.

### A. The long delay was unjustified

The first factor, the nature of the item seized, weighs in the Defendant's favor because a smart phone, like a computer, contains highly personal information. *See United States v. Escobar*, No. 15-CR-260 (PAM/TNL), 2016 WL 3676176, at *4–5 (D. Minn. July 7, 2016), citing *Mitchell*, 565 F.3d at 1352 ("Computers are relied upon heavily for personal and business use. Individuals may store personal letters, e-mails, financial information, passwords, family photos, and countless other items of a personal nature in electronic form on their computer hard drives."). The interference with the Defendant's possessory interest in his smart phone was "therefore more significant than it would be had the government seized a sheaf of papers or the like from him." *Escobar*, 2016 WL 3676176, at *5.

The second relevant factor is the duration of the delay. Here, it was more than four months. This is far longer than many courts have held reasonable and shows that law enforcement did not "diligently pursue their investigation." *Place*, 463 U.S. at 709. For example, in *Mitchell*, the 11th Circuit determined that a twenty-one-day delay in seeking a warrant to search a computer that the defendant conceded contained child pornography was unreasonable and could not be excused by the fact that the officer in charge of the investigation was out of town at a two-week training. The court instead noted that law enforcement made "[n]o effort … to obtain a warrant within a reasonable time because [they] simply believed that there

9

was no rush." *Mitchell*, 565 F.3d at 1353; *see also Escobar*, 2016 WL 3676176, at *5 (eight-month delay unreasonable); *United States v. Dass*, 849 F.2d 414, 416 (9th Cir. 1988) (delay of 16 to 23 days unreasonable).

The third factor, whether the Defendant consented to the seizure, is straightforward. He did not. Instead, his phone was seized incident to arrest.

As to the fourth factor, the Government's interest in maintaining possession of the phones in this case is minimal. In determining how strong the Government's interest is, courts examine the nature of the seizure: "The state has a stronger interest in seizures made [on] probable cause than in those resting only on reasonable suspicion. All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures." *Burgard*, 675 F.3d at 1033. In this case, the agents had neither reasonable suspicion nor probable cause to justify the seizure. Instead, the Government relied on exigent circumstances, the validity of which are still in question. Thus, as with the other factors, the final one also weighs in favor of suppression.

### B. The good faith exception does not apply where suppression is based on an unreasonably long seizure

The good faith exception should not apply where suppression is the result of an unreasonably long seizure. When an officer waits too long to obtain a search warrant, in violation of the Fourth Amendment, he cannot seek to have evidence admitted simply by pointing to that late-obtained warrant. If this were all that was needed, evidence would never be suppressed following these types of

violations because, by definition, the police would always have a warrant before they searched. *Burgard*, 675 F.3d at 1035–36.

The question for this Court is not whether police ultimately obtained a warrant; it is whether they failed to do so within a reasonable time. The Supreme Court has never suggested that this type of violation is wholly exempt from the exclusionary rule. See *Place,* 462 U.S. at 700 (upholding grant of motion to suppress because of a delay of 90 minutes after seizing luggage even though officers eventually searched under a warrant); *McArthur,* 531 U.S. at 326 (finding delay in obtaining a warrant reasonable, but never suggesting that *Leon*'s good-faith rule would have excused any unreasonable delay).

Furthermore, as the Court noted in *Burgard*, this type of violation would go unpunished were courts to excuse them based on later-obtained warrants:

> [R]emoving this sort of police misconduct from the ambit of the exclusionary rule would have significant implications: it would eliminate the rule's deterrent effect on unreasonably long seizures. Police could seize any item—a phone, a computer, a briefcase, or even a house—for an unreasonably long time without concern for the consequences, evidentiary and otherwise.

675 F.3d at 1035–36; *see also United States v. Song Ja Cha* (rejecting good faith defense and holding that "the exclusionary rule is applicable where seizures are unconstitutionally long" in order "to deter unreasonable police behavior and to provide for judicial determination of probable cause."). 597 F.3d 995, 1006 (9th Cir. 2010); see also *Id*. (suppression warranted because the officer's deliberate failure to seek a warrant with diligence was "sufficiently culpable that ... deterrence is

11

worth the price paid by the justice system."), (*quoting Herring v. United States*, 555 U.S. 135, 144 (2009).

## Conclusion

The affidavit in support of the search warrant failed to establish that evidence of the crime would be found on the cell phones. In addition, agents unreasonably delayed for more than four months prior to seeking a search warrant. Therefore, the results of the search must be suppressed.

Respectfully submitted,
Oscar Noe Recines-Garcia
By his attorneys,

/s/ Michael Tumposky
Michael Tumposky
BBO No. 660618
Hedges & Tumposky, LLP
50 Congress Street, Suite 600
Boston, MA 02109
T) (617) 722-8220
F) (617) 507-8116

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that on this the 26th of February, 2018, he has caused to be served a copy of this document by first-class mail, where unable to do so electronically, on the Assistant United States Attorney of record in this matter.

/s/ Michael Tumposky
Michael Tumposky